HENRIETTA CHILDS, Respondent, *v*. THE NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

*Passenger left by mistake at a wrong station — liability of the railroad company — duty of the passenger to act prudently — contributory negligence.*

Where, through an error or mistake of an employee of a railroad company, a person has been left at a wrong station, such person has the right to recover all damages naturally resulting from the corporation's fault and for any discomfort or inconvenience resulting to her therefrom; but there is a duty resting upon such person to conduct herself prudently in the situation in which she is placed, so that the discomforts and inconveniences shall not be unnecessarily increased, and to conduct herself so that no danger shall be unnecessarily run by her. If she acts imprudently, and as a result of such imprudence suffers injury, she is not entitled to recover for the injury resulting from her own imprudent action; the fact that the railroad company has placed her in a position where she has an opportunity to act imprudently does not justify her in doing so.

It is for the jury to determine what are the natural consequences of a railroad company's fault in leaving a person at a wrong station, and whether such person acted prudently in the situation in which she was placed, or whether, by her own imprudence, she brought upon herself the injury from which she is suffering; but in reaching its conclusion there are limitations to its power, and while the jury has a right to determine whether the injury from which the person is suffering is the natural result of an accident, that is not necessarily sufficient; it must find that the accident is the immediate or proximate cause of the injury.

Although the question of contributory negligence is one for the jury to pass upon, its decision is controlled by certain rules of law by which its action is governed.

Where a person, who has suffered from physical disability at intervals for about fifteen years, and who knows that any undue exercise or exposure will bring on a recurrence of such difficulty, is left by a railroad company, through a mistake of one of its employees, in the evening and during a rain storm, at a station some two or three miles distant from her destination, as a matter of law it is her duty, before she undertakes to walk to her destination, to make some inquiries whether she can procure a conveyance, and if not, whether there is a convenient place in the vicinity where she can be cared for over night, and when, failing to make such inquiries, she blindly and heedlessly undergoes the fatigue of the journey by foot, and the exposure to the elements, when there are places near at hand where she can be cared for during the night, she is not entitled to recover damages from the railroad company for the injuries resulting from such exposure.

APPEAL by the defendant, The New York, Ontario and Western Railway Company, from a judgment of the Supreme Court in

favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 1st day of May, 1893, rendered upon the verdict of a jury after a trial at the Ulster Circuit, and also from an order made on the 20th day of April, 1893, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

*William Vanamee,* for the appellant.

*John J. Linson,* for the respondent.

HERRICK, J.:

On the 3d day of July, 1890, the plaintiff, a widow, in company with her father, her little child, and a friend named Miss Smith, started from Middletown, a station on the defendant's railroad, to go to Purdys, another station on defendant's road, there to spend the fourth of July with a relative of the plaintiff who lived in that vicinity.

Miss Smith purchased the tickets for herself and the plaintiff. When the train reached Fair Oaks, a station about two miles distant from Purdys, the trainman, by some unexplained blunder, announced it as Purdys, and the plaintiff and her party, supposing it to be their destination, got out of the train; almost immediately upon alighting her father discovered the mistake, and said to the trainman that that place was Fair Oaks, and that they should not be left there; the trainman said that they had moved the station, and that it was Purdys, and the train immediately moved on.

Fair Oaks, it seems, is what is called a milk station; there was a small building there, partially open at the sides, in which milk cans were deposited. About fifty feet distant is a feed store, and a short distance from the feed store, and next to it, is a building described as an office; the proprietor of the feed store seems to have acted as the agent of the defendant at that place, selling tickets for passage over defendant's road, and his office being used as the waiting room.

At a distance of between 200 and 250 feet from the station there was a farm house, and at a distance of from 400 to 500 feet from the station was a hotel.

At the time that the plaintiff and her party alighted at the station there was present a brother of the proprietor of the feed store,

named Wallace, who had charge of it and the defendant's business
at that station in his brother's absence, and the son of the hotel
proprietor.

It was about seven o'clock in the evening when they alighted
from the train, and it was raining, a thunder storm passing over the
place at the time. After some little consultation the plaintiff and
her party proceeded to walk to Purdys by way of the railroad
tracks, and they arrived at her uncle's house about nine o'clock in
the evening.

The plaintiff had been afflicted for a number of years with some
uterine difficulty, which, according to the testimony, affected her
ankles, so that at intervals for a period of about fifteen years before
this occurrence she had been compelled to wear steel braces for her
ankles, but had not been wearing them for about two years prior to
the time in question.

The walk from Fair Oaks to Purdys and her exposure to the
rain during such journey, prostrated the plaintiff for the time being
and brought on a recurrence of her old difficulties, from which she
had not recovered at the time of the trial.

Upon the trial defendant produced evidence to the effect that
before plaintiff started to walk from Fair Oaks to Purdys, Wallace
called the attention of the party to the fact that there was a hotel
there where they could get accommodations for the night, which
was declined, and that then he informed them that he had a team
there and would take them to their destination, which was also
declined, and also evidence to the effect that as they started on their
walk the proprietor of the farm house called to them and offered to
take charge of them over night, and take them to their destination in
the morning without charge.

The plaintiff denied that there was any offer to take her to her
destination, denied that she was informed of the fact that there was
a hotel there where she could be accommodated, and denied that she
heard the farmer offer to take charge of them over night.

From the manner in which the court submitted the case to the
jury it must be assumed that the jury found in favor of the plain-
tiff upon those questions.

The plaintiff testified that she did not know of the existence of
any hotel there or of any farm house, and that she made no inquiries

and no effort to ascertain whether there was any place where she could be taken care of over night, but, without making any inquiries for or effort to secure lodgings for the night, started out on foot for Purdys.

The court charged the jury: "In view of the fact that there was here at this station this hotel and this house, it is for you to say whether she did, and the party did, that which was prudent under the circumstances, if they made up their minds to go on to Purdys in that rain without stopping at least to inquire whether there was near at hand a place where they could be protected over night. That subject is one that the court has refused to pass upon as a matter of law, and one which he submits to the jury, and which you are to carefully consider, and weigh and pass upon. And if you find that the plaintiff acted prudently in that which she did — if you find that she was not neglectful of herself and her condition in failing to make these inquiries touching a place of rest and shelter during the storm and the night — if you reach that conclusion — if you reach the conclusion that under all the information which she had and which was in her possession, and all the circumstances surrounding it, she was fully justified as a prudent person in taking the course which she did in going on to Purdys, then she is entitled to recover at your hands such a sum, if any, in damages as you think she may have suffered by reason of taking that trip."

This portion of the charge was excepted to by the defendant, and exceptions were also taken during the trial to the reception of evidence raising the same question, that is, as to whether the plaintiff was entitled to recover damages for the injuries sustained by her by her walk from Fair Oaks to Purdys and her exposure to the rain during such walk.

The plaintiff relies upon the case of *Ehrgott* v. *Mayor* (96 N. Y. 264) to sustain the proposition contended for by her.

In that case "the jury found that the diseases from which the plaintiff suffered were the direct result both of the accident (the breaking of the axle and his falling over the dashboard) and the subsequent exposure, and that the effect of the exposure was simply to increase and aggravate the injury received from the accident.

"The jury found that the plaintiff was blameless for the subsequent exposure, and, therefore, so far as that operated in causing

injury to the plaintiff, it was a cause for which he was not respon-
sible.   There were, according to the finding of the jury, two causes
operating to produce plaintiff's injuries, each of which was essential
to produce the results.   The accident without the exposure, and the
exposure without the accident, would not have caused them." And
the opinion proceeds : " When several proximate causes contribute
to an accident, and each is an efficient cause, without the operation
of which the accident would not have happened, it may be attributed
to all or any of the causes ; but it cannot be attributed to a cause
unless, without its operation, the accident would not have happened.
Here, as I understand the findings of the jury, the plaintiff's
injuries would not have been suffered but for the strain and shock
of the accident.   While both causes were proximate, that was the
nearest and most direct.   Still further.   It was certainly impossible
for the plaintiff to prove, or for the jury to find, how much of the
injury was due to either cause alone.   It was wholly impossible to
apportion the damage between the two causes."

In this case the plaintiff arrived at Fair Oaks station safe and
sound ; she suffered no physical injury in alighting at the wrong
station.   When she started on her walk from Fair Oaks to Purdys
nothing had been done by the defendant which rendered her physi-
cal system unusually susceptible to injury, either from the walk or
from exposure to the rain during the walk, wherein this case essen-
tially differs from the *Ehrgott* case.   Again, in that case there were
two concurrent causes, the injuries received by the accident and the
subsequent exposure, naturally under the circumstances resulting
from that accident ; in this case there is only one, and it seems to me
that the only question that arises is as to whether the plaintiff's walk
and the exposure which caused her sickness were the natural conse-
quences of defendant's fault in leaving her at the wrong station.

The plaintiff undoubtedly has the right to recover all damages
naturally resulting from the defendant's fault, and for any discom-
fort or inconvenience suffered by her therefrom, but there was also
a duty resting upon her to conduct herself prudently in the situa-
tion in which she had been placed, so that those discomforts and
inconveniences should not be unnecessarily increased, and to so con-
duct herself that no danger should be unnecessarily run by her.   If
she acted imprudently, and as a result of such imprudence suffered

injury, then she is not entitled to recover for the injury resulting from her own imprudent action ; the fact that the defendant had placed her in a position where she had an opportunity to act imprudently does not justify her in so acting.

While it is a question for the jury to determine what are the natural consequences of the defendant's fault, and they are to determine whether the plaintiff acted prudently in the situation in which she was placed, or whether by her own imprudence she brought upon herself the injury from which she is suffering, still, in reaching their conclusions upon such questions, there are limitations to their power in that respect ; while they have the right to determine whether the injury from which the person is suffering is the natural result of an accident, that is not necessarily sufficient; they must find that the accident is the immediate or proximate cause of such injury.

The question of contributory negligence is one for the jury to pass upon ; still they are governed by certain rules of law in that respect to guide their action, as, for instance, a person approaching a railroad crossing must look and listen for approaching trains, and the jury are not at liberty to say that he is not guilty of contributory negligence in the absence of evidence that he has taken such precautions ; so, in determining the question of prudence, it must not be a mere arbitrary determination on their part, but one limited and guided by law, and it seems to me that the court erred in refusing to find, as a matter of law, that it was the plaintiff's duty under all the circumstances to inquire whether there was near at hand a place where she could be protected over night, before she started on what was to her a dangerous journey by foot, and in submitting the question of prudence, without limitation or restriction, to the jury.

The plaintiff, as we have seen, had been suffering from physical disability at intervals for about fifteen years ; she knew that any undue exercise or exposure would bring on a recurrence of such difficulty. She is left at a station in the evening, during a rain storm, some two miles distant from her destination, and it seems to me that as a matter of law it was her duty, before she undertook to walk there, in her precarious condition of health and in a storm, to make some inquiries whether she could procure any conveyance there, and if not, whether there was any convenient place in the

vicinity where she could be cared for over night, and that, failing to make such inquiries, and blindly and heedlessly undergoing the fatigue of the journey by foot, and the exposure to the elements, when there were places near at hand where she could have been cared for during the night, she is not entitled to recover damages for the injuries resulting from such exposure.

The judgment should, therefore, be reversed, and a new trial granted, costs to abide the event.

PUTNAM, J., concurred; MAYHAM, P. J., concurred in result.

Judgment reversed, new trial granted, costs to abide the event.